# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUDITH GODINEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>         Plaintiffs,<br><br>v.<br><br>ALERE INC., *et al.*,<br><br>         Defendants. | Civil Action No. 1:16-cv-10766 (PBS) |

## MEMORANDUM OF LAW IN SUPPORT OF LEAD PLAINTIFFS' UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF SETTLEMENT; (II) CERTIFICATION OF SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY; AND (III) APPROVAL OF NOTICE TO SETTLEMENT CLASS

Edward F. Haber (BBO#215620)
Adam M. Stewart (BBO#661090)
**SHAPIRO HABER & URMY LLP**
Seaport East
Two Seaport Lane
Boston, MA 02210
Tel. (617) 439-3939
Fax. (617) 439-0134
ehaber@shulaw.com
astewart@shulaw.com

*Liaison Counsel for Lead Plaintiffs
and the Proposed Settlement Class*

Jeffrey S. Abraham (admitted *pro hac vice*)
Lawrence D. Levit (admitted *pro hac vice*)
Todd Kammerman (admitted *pro hac vice*)
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
One Penn Plaza, Suite 2805
New York, New York 10119
(212) 279-5050
jabraham@aftlaw.com
llevit@aftlaw.com
tkammerman@aftlaw.com

Vincent R. Cappucci (admitted *pro hac vice*)
Robert N. Cappucci (admitted *pro hac vice*)
Brendan J. Brodeur (BBO#675353)
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, NY 10171
(212) 894-7200
vcappucci@entwistle-law.com
rcappucci@entwistle-law.com
bbrodeur@entwistle-law.com

*Lead Counsel for Lead Plaintiffs
and the Proposed Settlement Class*

Dated: February 1, 2019

i

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND OF THE LITIGATION................................................................................... 2

ARGUMENT ................................................................................................................................ 6

I.      THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............... 6

        A.      The Standard for Preliminary Approval..................................................................... 6

        B.      The Settlement Is the Result of Good Faith, Arm's-Length Negotiations Conducted by Well-Informed and Experienced Counsel After Extensive Discovery ................................................................................................................... 8

        C.      The Substantial Benefits for the Settlement Class -- Weighed Against Litigation Risks -- Support Preliminary Approval...................................................... 10

II.     CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE ................................................................................... 12

III.    NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ......................... 13

IV.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ................................................ 14

CONCLUSION............................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................................. 12

*Basic, Inc. v. Levinson*,
   485 U.S. 224 (1988) .................................................................................................................. 11

*Bezdek v. Vibram USA, Inc.*,
   809 F.3d 78 (1st Cir. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) .............................................. 6, 14

*Bussie v. Allmerica Fin. Corp.*,
   50 F. Supp. 2d 59 (D. Mass. 1999) ......................................................................................... 8, 10

*Durrett v. Hous. Auth. of the City of Providence*,
   896 F.2d 600 (1st Cir. 1990) ........................................................................................................ 6

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .................................................................................................................. 14

*Giusti-Bravo v. U.S. Veterans Admin.*,
   853 F. Supp. 34 (D.P.R. 1993) .................................................................................................. 10

*Gulbankian v. MW Mfrs., Inc.*,
   No. 10-10392-RWZ, 2014 WL 7384075 (D. Mass. Dec. 29, 2014) ............................................ 9

*Hochstadt v. Boston Sci. Corp.*,
   708 F. Supp. 2d 95 (D. Mass. 2010) ........................................................................................ 7, 8

*In re Asacol Antitrust Litig.*,
   No. 1:15-cv-12730 (DJC), 2017 WL 4118967 (D. Mass. Sept. 14, 2017) .................................. 7

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   216 F.R.D. 197 (D. Me. 2003) .................................................................................................. 14

*In re Lupron® Mktg. & Sales Practices Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004) ......................................................................................... 7

*In re Pharm. Indus. Average Wholesale Price Litig.*,
   588 F.3d 24 (1st Cir. 2009) ......................................................................................................... 7

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ...................................................................................................... 14

*Mehling v. New York Life Ins. Co.*,
    246 F.R.D. 467 (E.D. Pa. 2007)......................................................................................... 7

*Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*,
    582 F.3d 30 (1st Cir. 2009)............................................................................................... 6

*Pietrantonio v. Ann Inc.*,
    No. 13-CV-12721-RGS, 2014 WL 12797441 (D. Mass. Apr. 16, 2014).................................. 14

*Rhodes v. Olson Assocs., P.C.*,
    308 F.R.D. 664 (D. Colo. 2015)........................................................................................ 7

*Roberts v. TJX Cos., Inc.*,
    No. 13-CV-13142-ADB, 2016 WL 8677312 (D. Mass. Sept. 30, 2016).................................. 9

*Rolland v. Cellucci*,
    191 F.R.D. 3 (D. Mass. 2000).......................................................................................... 10

*United States v. Comunidades Unidas Contra La Contaminacion*,
    204 F.3d 275 (1st Cir. 2000)............................................................................................. 6

**Statutes**

PSLRA, 15 U.S.C. § 78u-4(a)(7).............................................................................................. 14

**Other Authorities**

Fed. R. Civ. P. 23............................................................................................................. 1, 14

Fed. R. Civ. P. 23(a) ............................................................................................................. 12

Fed. R. Civ. P. 23(b) ............................................................................................................. 12

Fed. R. Civ. P. 23(b)(3).................................................................................................... 12, 13

Fed. R. Civ. P. 23(e) ......................................................................................................... 1, 6

**Rules**

4 William B. Rubenstein, *Newberg on Class Actions* (5th ed. 2014).................................. 7

David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* (4th ed. 2018) ............ 7

*Manual for Complex Litigation (Fourth)* (4th ed. 2004) ..................................................... 6

Lead Plaintiffs Glazer ("Glazer") and OFI Asset Management ("OFI") (collectively, "Lead Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for entry of the Parties' agreed-upon proposed Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order"), which is attached to Lead Plaintiffs' Unopposed Motion for (I) Preliminary Approval of Settlement; (II) Certification of Settlement Class for Settlement Purposes Only; and (III) Approval of Notice to Settlement Class (the "Lead Plaintiffs' Motion") as Exhibit 2.[1]

## PRELIMINARY STATEMENT

The Parties have entered into a proposed Settlement of this Action providing for a cash payment of $20,000,000 for the benefit of the Settlement Class.[2] Lead Plaintiffs now request that the Court preliminarily approve the proposed Settlement. Entry of the proposed Preliminary Approval Order will authorize Lead Plaintiffs to provide notice of the Settlement's terms to potential members of the Settlement Class, set a deadline for potential Settlement Class Members to object to, or opt out of, the Settlement, and set a date for a final approval hearing (the "Settlement Hearing") before this Court to determine, among other things, whether the proposed Settlement is fair, reasonable and adequate as required by Fed. R. Civ. P. 23(e). Lead Plaintiffs respectfully

---

[1] All capitalized terms used herein that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated as of January 31, 2019 (the "Stipulation," ECF No. 256), which was entered into by and among: (i) Lead Plaintiffs, on behalf of themselves and the Settlement Class; and (ii) defendants Alere Inc. ("Alere" or the "Company"), Namal Nawana ("Nawana") and James F. Hinrichs ("Hinrichs") (collectively, the "Defendants" and, together with Lead Plaintiffs, the "Parties")).

[2] The Settlement Class, which has been stipulated to by the Parties for purposes of settlement only, consists of all persons and entities who purchased or otherwise acquired the publicly-traded common stock of Alere Inc. during the period from May 9, 2013 through October 3, 2017, inclusive (the "Class Period"). Stipulation ¶ 1(pp). Excluded from the Settlement Class are Defendants, the Officers and directors of Alere at all relevant times, their Immediate Family Members and their legal representatives, heirs, successors or assigns, corporate parents and/or affiliates and any entity in which any of the above have or had a controlling interest, and any person or entity who or which submits a request for exclusion to the Claims Administrator by the opt-out deadline that satisfies the requirements set forth in the Notice and that is accepted by the Court. *Id*.

submit, for the reasons set forth in greater detail below, that the proposed Settlement warrants preliminary approval in light of the substantial benefits it will achieve, the significant risks of continued litigation, and the fact that it was the result of arm's-length negotiations by experienced counsel. Lead Plaintiffs further submit that the Court should, for purposes of the Settlement only, certify the Settlement Class and approve the proposed Notice to the Settlement Class.

In order to facilitate this process, the proposed Preliminary Approval Order will, among other things:

    (i)     preliminarily approve the terms of the Settlement set forth in the Stipulation;

    (ii)     certify the Settlement Class for settlement purposes only;

    (iii)     approve the form and content of the Notice, Claim Form and Summary Notice attached as Exhibits A-1, A-2 and A-3 to the proposed Preliminary Approval Order;

    (iv)     find that the procedures established for distribution of the Notice and Claim Form and publication of the Summary Notice in the manner and form set forth in the proposed Preliminary Approval Order constitute the best notice practicable under the circumstances, and comply with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, as amended, and all other applicable law and rules; and

    (v)     schedule the Settlement Hearing and set out a schedule and procedures for: disseminating the Notice and Claim Form and publishing the Summary Notice; requesting exclusion from the Settlement Class; objecting to the Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; and submitting papers in support of final approval of the Settlement.

## BACKGROUND OF THE LITIGATION

This putative securities class action was commenced on April 21, 2016 with the filing of an initial complaint alleging claims arising under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). (ECF No. 1.) On June 20, 2016, several motions seeking consolidation of this Action with a related action and the appointment of lead plaintiff were

filed pursuant to Section 21D of the Exchange Act, a provision added by the PSLRA.[3]  (ECF Nos. 4, 9, 10, 14, 15, 23.)  On July 12, 2016, the Court entered an Order:  (i) granting Glazer's motion to consolidate actions; (ii) appointing Glazer as Lead Plaintiff; and (iii) approving Abraham, Fruchter & Twersky, LLP ("AFT") to serve as Lead Counsel and Shapiro Haber & Urmy LLP as Liaison Counsel.  (ECF No. 59.)

On September 23, 2016, Glazer filed and served a consolidated class action complaint.  (ECF No. 64.)  Upon leave of the Court, on January 4, 2017, Glazer filed and served a Supplemental and Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint").  (ECF No. 78.)  The Complaint asserts, among other things, that Defendants knowingly or recklessly made materially false and misleading statements concerning Alere's business, finances, operations and products.

On February 6, 2017, Defendants moved to dismiss the Complaint.  (ECF No. 80.)  After thorough briefing of the issues, including the filing of a reply brief by Defendants and a sur-reply brief by Plaintiffs (ECF Nos. 86, 88, 91), and oral argument, the Court entered an Order on August 23, 2017:  (i) denying the motion to dismiss as to certain alleged materially false and misleading statements and omissions related to Alere's INRatio product line; (ii) granting the motion to dismiss as to all other alleged materially false or misleading statements or omissions; and (iii) dismissing all claims against Defendant Carla Flakne.  (ECF No. 103.)  On November 3, 2017, Defendants filed their Answer and Affirmative Defenses to the Complaint.  (ECF No. 128.)  In light of the Court's ruling on the motion to dismiss, Glazer stipulated to the addition of OFI as a

---

[3] Pub. L. 104-67, 109 Stat. 737.

Lead Plaintiff, and to its counsel Entwistle & Cappucci LLP's appointment as Co-Lead Counsel, alongside AFT, thereby preempting an anticipated challenge to Glazer's standing.[4]

Meanwhile, on September 26, 2017, the Court entered a Scheduling Order (ECF Nos. 108, 109, 110) and, on September 27, 2017, Lead Plaintiffs served their first set of document requests on Defendants. Shortly thereafter, Lead Plaintiffs served subpoenas *duces tecum* on non-parties, including the U.S. Food and Drug Administration, the U.S. Securities and Exchange Commission, and multiple large corporations and financial institutions and several individuals. On October 16, 2017, the Parties exchanged initial disclosures pursuant to Fed. R. Civ. P. Rule 26(a)(1) as well as a separate set of initial disclosures pursuant to the Court's Local Rules. On December 21, 2017, Defendants served upon Plaintiffs their first set of requests for production of documents and first set of interrogatories.

Throughout the discovery process, counsel for Lead Plaintiffs participated in numerous meet and confer sessions regarding discovery and document production with Defendants and non-parties and ultimately obtained the production of over 550,000 pages of documents. Lead Plaintiffs produced more than 100,000 pages of documents to Defendants.

Lead Counsel consulted with experts and performed substantial work regarding expert analysis and discovery, including with respect to damages allegedly suffered by Plaintiffs. In addition, Lead Counsel prepared and filed Lead Plaintiffs' class certification motion, which required working with their expert on a report regarding the efficiency of the market for Alere common stock, the asserted impact of the alleged corrective disclosures on the price of Alere common stock, and the feasibility of calculating damages on a class-wide basis.

---

[4] Previously, OFI had served on Plaintiffs' executive committee, and Entwistle & Cappucci LLP had assisted with the investigation for, and drafting of, the Complaint.

On March 7, 2018, Lead Counsel and Defendants' Counsel participated in a mediation session before the Honorable Gary A. Feess (ret.) of Phillips ADR. A settlement was not reached during the mediation. However, following the mediation, the Parties continued to engage in discussions regarding a possible settlement. While those discussions were ongoing, the Parties continued to litigate the Action, including: (i) reviewing and analyzing extensive additional document productions by the Parties and by non-parties; (ii) briefing and arguing three motions to compel filed by Lead Plaintiffs; (iii) conducting five depositions related to class certification, including depositions of Lead Plaintiffs and of Plaintiffs' expert; and (iv) preparing for four additional depositions related to the merits of the claims and defenses which were noticed by Lead Plaintiffs for August of 2018.

In light of the mediation, multiple motion hearings before the Court, and additional discovery, Plaintiffs were able to more accurately assess the merits and risks of continuing to prosecute the Action and, in July 2018, the Parties determined that they were close to reaching a settlement agreement. Accordingly, the Parties postponed all noticed depositions and certain other deadlines, including further briefing on the issue of class certification, to allow the Parties to focus on settlement discussions.

The Parties subsequently reached an agreement in principle to settle the Action for $20,000,000, to be paid by or on behalf of Defendants. That agreement in principle to settle the Action was memorialized in a term sheet executed on August 31, 2018. On that date, the Parties also filed with the Court a Joint Motion to Stay Proceedings, which the Court granted on September 4, 2018. (ECF Nos. 246, 247.) Thereafter, according to the negotiated terms, the Parties executed the Stipulation, setting forth a more comprehensive binding agreement to settle this Action. Pursuant to the Stipulation, Lead Plaintiffs have agreed to settle and release all claims asserted

against Defendants in return for a cash payment of $20,000,000 for the benefit of the Settlement Class. *See* Stipulation ¶¶ 5-8.

## ARGUMENT

### I. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

#### A. The Standard for Preliminary Approval

The settlement of class action litigation is favored. *See United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) ("At this point we underscore two policies that heavily brigade the decree. The first is the strong public policy in favor of settlements, particularly in very complex and technical regulatory contexts."); *Durrett v. Hous. Auth. of the City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) ("In so reviewing a refusal to enforce a voluntary settlement we must also recognize, as a second guideline, that the district court's discretion is restrained by 'the clear policy in favor of encouraging settlements[.]'" (citation omitted)). The proponent of a class action settlement must demonstrate that the settlement is fair, reasonable and adequate, but generally "there is a presumption in favor of the settlement" where, as here, "discovery has been adequate and the parties have bargained at arms length." *Nat'l Ass'n of Chain Drug Stores v. New Eng. Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009) (quotation marks and citation omitted). *See also Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015) ("If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." (citation omitted)).

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of class actions. Fed. R. Civ. P. 23(e). Approval of a class action settlement involves a two-step process. First, the Court reviews the proposed terms of the settlement for a preliminary fairness evaluation. *See Manual for Complex Litigation (Fourth)* § 21.632 (2004). The second

step is to conduct a formal fairness and final approval hearing after notice has been disseminated to settlement class members. *Id.* at §§ 21.633, 21.634; *Hochstadt v. Boston Sci. Corp.*, 708 F. Supp. 2d 95, 107 (D. Mass. 2010).

A court's review for preliminary approval is "less demanding" than for final approval. *See* 4 William B. Rubenstein, *Newberg on Class Actions* § 13:13 (2014)); *Rhodes v. Olson Assocs., P.C.*, 308 F.R.D. 664, 666 (D. Colo. 2015) (citing cases); *Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007). "At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.662 (2018)); *see also Hochstadt*, 708 F. Supp. 2d at 107 (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)) ("there is generally a presumption in favor of the settlement '[i]f the parties negotiated at arm's length and conducted sufficient discovery'" (alteration in original)).

While the First Circuit has not specified a methodology for determining preliminary approval, courts in this Circuit often look to four factors to determine whether a settlement should be presumed fair: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron® Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (citation and quotation marks omitted); *In re Asacol Antitrust Litig.*, No. 1:15-cv-12730 (DJC), 2017 WL 4118967, at *3 (D. Mass. Sept. 14, 2017) (noting that the fourth factor is "more often relevant for purposes of final approval, after notice has issued and class members have been given an opportunity to object to a settlement").

Here, Lead Plaintiffs have satisfied the first three factors of the test and the fourth factor is not yet relevant because notice has not yet been sent to the Settlement Class.

### B. The Settlement Is the Result of Good Faith, Arm's-Length Negotiations Conducted by Well-Informed and Experienced Counsel After Extensive Discovery

Here, the Settlement is the product of arm's-length negotiations between well-informed and experienced counsel, including with the assistance of an experienced mediator. After significant documentary discovery and in consultation with experts, the Parties initially explored the possibility of settlement with the assistance of Judge Feess, an experienced mediator of securities class actions. The mediation process included detailed discussion of both liability and damages, followed by a four-hour in-person mediation session. Although the mediation did not culminate in settlement due to the Parties' disagreements on substantive issues, the state of discovery at that time and certain outstanding motions, the Parties continued direct settlement discussions over several months, and additional discovery allowed Lead Plaintiffs to be sufficiently-informed of the merits of the case. After reaching an agreement in principle to settle the Action on August 31, 2018, the Parties have continued to work diligently and carefully in structuring all aspects of the Settlement terms.

The Parties' efforts indicate that they have conducted the settlement negotiations at arm's length. *See, e.g., Hochstadt*, 708 F. Supp. 2d at 107 (finding a month spent on exchanging multiple proposals and two months on detailing the settlement terms after reaching a compromise were "persuasive indicators" that the settlement was the result of arm's-length negotiations); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 66, 77 (D. Mass. 1999) (finding extensive discovery, including expert consultation, probative of fairness and that negotiations "conducted at arms' length over several months" supported "a strong initial presumption" of substantive fairness).

The Parties' initial efforts and the lengthy continued negotiations after the mediation further support the conclusion that the Settlement was achieved free of collusion and merits preliminary approval. *See, e.g., Gulbankian v. MW Mfrs., Inc.*, No. 10-10392-RWZ, 2014 WL 7384075, at *6-7 (D. Mass. Dec. 29, 2014) (rejecting alleged collusion where "all appearances and sworn declarations" by the parties' counsel and a respected and experienced neutral mediator indicated that "the negotiations were drawn-out and contentious"); *Roberts v. TJX Cos., Inc.*, No. 13-CV-13142-ADB, 2016 WL 8677312, at *5 (D. Mass. Sept. 30, 2016) (finding settlement entitled to a presumption of reasonableness where the parties were represented by competent counsel, conducted sufficient discovery, exchanged large amounts of information and documents for mediation, engaged in an all-day session directed by an experienced class action mediator, and continued to negotiate after the mediation did not result in an immediate settlement).

In addition, the Parties and their counsel were knowledgeable about the strengths and weaknesses of the claims prior to reaching the agreement to settle them. Among other things, Lead Plaintiffs: (i) conducted an extensive investigation prior to filing the Complaint; (ii) participated in an initial mediation process that provided Lead Plaintiffs with a thorough understanding of Defendants' arguments on liability and damages; (iii) conducted substantial documentary discovery both before and after the mediation, including motion practice and the review of over 650,000 pages of documents produced by Parties and non-parties; (iv) consulted with experts regarding damages, causation and market efficiency; (v) attended depositions conducted by Defendants; and (vi) subpoenaed and fully prepared to depose hostile fact witnesses. As a result, Lead Plaintiffs and Lead Counsel had an adequate and sound basis for assessing the strengths and weaknesses of the Settlement Class' claims and Defendants' defenses when they entered into the Settlement. *See, e.g., Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324, 347-48 (D. Mass.)(aff'd

809 F.3d 78 (1st Cir. 2015) finding sufficient understanding of the merits existed although the parties had not yet completed written discovery or conducted any depositions, because skilled class counsel recognized that the court's ruling on motion to dismiss and the ensuing document disclosures by defendants and third parties presented significant hurdles and that settling before class certification and trial might present a better outcome).

Moreover, Lead Plaintiffs are sophisticated institutional investors and Lead Counsel are among the leading securities class action litigation firms in the nation. Their judgment that the Settlement is in the best interest of the Settlement Class should also be given weight. *See Rolland v. Cellucci,* 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *Bussie*, 50 F. Supp. 2d at 77 (same); *Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) ("The Court must also take into account the recommendation of counsel, but the weight accorded to it is dependent on a variety of factors, among them the length of their involvement in the litigation, their competence, and their experience in this particular type of litigation.") (citation omitted).

Given that the Settlement is the product of extensive arm's-length negotiation, beginning with a mediation session overseen by an experienced mediator, has been approved by sophisticated Lead Plaintiffs, and was entered into by experienced and informed counsel with the benefit of sufficient discovery, preliminary approval is warranted.

**C.     The Substantial Benefits for the Settlement Class -- Weighed Against Litigation Risks -- Support Preliminary Approval**

The proposed Settlement creates a total Settlement amount of $20,000,000 in cash as described above. As will be explained in greater detail in advance of the Settlement Hearing, this

recovery provides a substantial benefit to the Settlement Class considering the risks posed by continued litigation. While Lead Plaintiffs believe that the claims asserted against Defendants are meritorious, they recognize that this Action presents significant risks to establishing both liability and damages. At the time the agreement in principle to settle was reached, Defendants had obtained dismissal of most of Plaintiffs' asserted claims, and raised numerous credible arguments directed at Lead Plaintiffs' ability to prove their sustained claim. Among other things, Defendants argue that Lead Plaintiffs cannot prove scienter as to the statements at issue, that the PSLRA's "safe harbor" protecting forward-looking statements should apply, that the statements at issue were substantially accurate when made, and that any undisclosed issues related to the INRatio device were not material.

Even if Lead Plaintiffs overcame these hurdles to establishing liability, Lead Plaintiffs would confront challenges in establishing loss causation and damages. For example, Defendants assert, citing analyst reports and other sources, that other concerns besides the problems with the INRatio device caused the price of Alere common stock to decline, and also argue that Plaintiffs may not be entitled to a "fraud on the market" presumption of reliance under *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988).

Furthermore, even if Lead Plaintiffs were to prevail on Defendants' anticipated motion for summary judgment and at trial, appeals would likely follow. At each of these stages, there would be significant risks attendant to the continued prosecution of the Action, and there would be no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

In the context of these significant litigation risks, the immediate $20,000,000 recovery for the Settlement Class is an excellent result. Lead Plaintiffs and Lead Counsel believe that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class.

## II. CERTIFICATION OF THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES IS APPROPRIATE

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Courts have long acknowledged the propriety of a settlement class. Fed. R. Civ. P. 23(a), (b)(3). *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem*, 521 U.S. at 620 (noting that whether trial would present intractable management problems is not a consideration when settlement-only certification is requested). As discussed more fully in Plaintiff's March 19, 2018 Memorandum of Law in Support of Their Motion for Class Certification (ECF No. 176 "Plaintiffs' Class Certification Brief"), settlement of this Action should proceed on a class-wide basis pursuant to Rule 23(a) and Rule 23(b)(3).

Certification of the Settlement Class is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613. Here, Lead Plaintiffs have shown that each of these requirements were met in their Motion for Class Certification. (*See* ECF No. 176 at 6-10).[5]

---

[5] Plaintiffs' motion to certify a class (ECF No. 175) was pending when the Action was stayed. The Parties have jointly defined a class to be certified for the purposes of the Settlement only (see footnote 2, *supra*) which embodies a larger time period than that previously sought by Lead Plaintiffs, with the other aspects remaining substantially the same. That difference does not meaningfully impact Lead Plaintiffs' arguments.

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements, because common legal and factual questions predominate in this Action and a class action is superior to other methods of adjudication. (*See* Plaintiffs' Class Certification Brief, ECF No. 176, at 10-20.)

In light of the above, added to the fact that Defendants have stipulated to class certification for settlement purposes only, the Court should certify the Settlement Class.

### III.   NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

As outlined in the proposed Preliminary Approval Order, Lead Counsel will notify the potential Settlement Class Members of the Settlement by mailing the Notice and Claim Form to all potential Settlement Class Members who can be identified with reasonable effort. The Notice will advise potential Settlement Class Members of: (i) the pendency of the Action; (ii) the essential terms and the effect of the proposed Settlement; and (iii) information regarding Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses.

The Notice will also provide specifics on the date, time, and place of the Settlement Hearing and set forth the procedures, as well as deadlines, for opting out of the Settlement Class, for objecting to the proposed Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form. The proposed Preliminary Approval Order also requires Lead Counsel to cause the Summary Notice to be published once in *The Wall Street Journal* within fourteen (14) calendar days of the order. Lead Counsel will also

cause a copy of the Notice and Claim Form to be readily available on the website of the Claims Administrator.

The form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice and Summary Notice "provide[] all of the required information concerning the class members' right[s] and obligations under the settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 328 (3d Cir. 1998); *see also Bezdek*, 79 F. Supp. 3d at 336; *Pietrantonio v. Ann Inc.*, No. 13-CV-12721-RGS, 2014 WL 12797441, at *1 (D. Mass. Apr. 16, 2014). The manner of providing notice, which includes individual notice by mail to all potential Settlement Class Members who can be reasonably identified, represents the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 218 (D. Me. 2003) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175 (1974) ("[I]ndividualized notice by first-class mail ordinarily satisfies the requirement that class members receive the best notice practicable under the circumstances.").

### IV.  PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Lead Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The timing of events is determined by the date the proposed Preliminary Approval Order is entered and the date the Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date 91 calendar days after entry of the proposed Preliminary Approval Order (the "Notice Date"), or at the Court's earliest convenience thereafter.

| **Event** | **Proposed Timing** |
|---|---|
| Deadline for publishing the Summary Notice (proposed Preliminary Approval Order, ECF No. 257 at ¶ 7(d)) | Within 14 calendar days after the Notice Date |
| Deadline for Alere to provide its list of registered shareholders to the Claims Administrator (*Id.* at ¶ 7(a)) | Within 21 calendar days after the Notice Date |
| Deadline for mailing the Notice and Claim Form to potential Settlement Class Members (*Id.* at ¶ 7(b)) | Within 42 calendar days after the Notice Date. |
| Deadline for filing and serving papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for an award of attorneys' fees and reimbursement of Litigation Expenses (*Id.* at ¶ 28) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests or objections (*Id.* at ¶¶ 14, 17) | 30 calendar days prior to the Settlement Hearing |
| Deadline for filing and serving reply papers (*Id.* at ¶ 28) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (*Id.* at ¶ 5) | 91 calendar days after the Notice Date |
| Deadline for submitting Claim Forms (*Id.* at ¶ 10) | 120 calendar days after the Notice Date |

## CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit A to Lead Plaintiffs' Motion, which will: (i) preliminarily approve the proposed Settlement; (ii) certify the Settlement Class and appoint Lead Plaintiffs as class representatives and Lead Counsel as Class Counsel, for settlement purposes only; (iii) approve the proposed form and manner of notice to potential Settlement Class Members; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: February 1, 2019　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Adam M. Stewart*
　　　　　　　　　　　　　　　　　　　　　　　　　Adam M. Stewart (BBO#661090)
　　　　　　　　　　　　　　　　　　　　　　　　　astewart@shulaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　Edward F. Haber (BBO#215620)
　　　　　　　　　　　　　　　　　　　　　　　　　ehaber@shulaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　**SHAPIRO HABER & URMY LLP**
　　　　　　　　　　　　　　　　　　　　　　　　　Seaport East
　　　　　　　　　　　　　　　　　　　　　　　　　Two Seaport Lane
　　　　　　　　　　　　　　　　　　　　　　　　　Boston, MA 02210
　　　　　　　　　　　　　　　　　　　　　　　　　(617) 439-3939

　　　　　　　　　　　　　　　　　　　　　　　　　*Plaintiffs' Liaison Counsel*

| **ABRAHAM, FRUCHTER & TWERSKY, LLP** | **ENTWISTLE & CAPPUCCI LLP** |
|---|---|
| Jeffrey S. Abraham (admitted *pro hac vice*) | Vincent R. Cappucci (admitted *pro hac vice*) |
| jabraham@aftlaw.com | vcappucci@entwistle-law.com |
| Lawrence D. Levit (admitted *pro hac vice*) | Robert N. Cappucci (admitted *pro hac vice*) |
| llevit@aftlaw.com | rcappucci@entwistle-law.com |
| Todd Kammerman (admitted *pro hac vice*) | Brendan J. Brodeur (BBO#675353) |
| tkammerman@aftlaw.com | bbrodeur@entwistle-law.com |
| One Penn Plaza, Suite 2805 | 299 Park Avenue, 20th Floor |
| New York, New York 10119 | New York, NY 10171 |
| Telephone: (212) 279-5050 | Telephone: (212) 894-7200 |
| Facsimile (212) 279-3655 | Facsimile: (212) 894-7272 |

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

　　　I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF") on this February 1, 2019.

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Adam M. Stewart*
　　　　　　　　　　　　　　　　　　　　　　　　　Adam M. Stewart